IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH DELINSKI OSBORNE, )
)
    Plaintiff, )
)
  -vs- ) Civil Action No. 16-96
)
NANCY A. BERRYHILL,[1] )
ACTING COMMISIONER OF SOCIAL )
SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

# OPINION AND ORDER

## Synopsis

Plaintiff Sarah Delinski Osborne ("Osborne") brings this action seeking judicial review of the ALJ's decision denying a claim for disability insurance benefits ("DIB"). Osborne applied for benefits in February of 2015, alleging a disability beginning on September 1, 2014. (R. 15) She appeared and testified at a September 2, 2015 video hearing as did a vocational expert. (R. 15) The ALJ denied Osborne's claim, finding her capable of light work with certain restrictions. (R. 23) Osborne has appealed and challenged the ALJ's decision in several respects. Pending are Cross Motions for Summary Judgment. Docket no. 8 and Docket no. 12. After careful consideration, I find Osborne's arguments to be unpersuasive. Consequently, the ALJ's decision is affirmed.

## Legal Analysis

1. Standard of Review

---

[1] Nancy A. Berryhill because acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

    2. The Vocational Expert

Osborne argues that the ALJ's reliance upon the vocational expert's ("VE") testimony was erroneous and not supported by substantial evidence. Her argument in

this respect is two-fold. First, she contends that the VE, Roger Dennison, was not qualified to serve as a VE. *See* ECF docket no. 9, p. 4-7. Second, Osborne urges that the ALJ failed to satisfy the requirements set forth in the Hearings Appeals and Litigation Manual ("HALLEX"). 1-2-6-78 (S.S.A.), 1993 WL 751902. For the reasons set forth below, I reject both contentions.

### A. The VE's Qualifications

As to the first contention, counsel for the claimant did a thorough and capable job at the hearing of highlighting Dennison's lack of formal training and degrees / certifications in the field of vocational rehabilitation. Yet, as all parties to this proceeding acknowledge, there are no statutory or regulatory provisions that provide minimum qualifications for VEs as a precondition for testifying in social security proceedings. *See* ECF Docket No. 9, p. 5; ECF Docket No. 13, p. 11. Instead, Osborne relies upon a passage in the Vocational Expert Handbook, which provides that a vocational expert should have:

> Up-to-date knowledge of, and experience with, industrial and occupational trends and local labor market conditions; an understanding of how we determine whether a claimant is disabled, especially at steps 4 and 5 of the sequential evaluation process we describe beginning on page 13; current and extensive experience in counseling and job placement of people with disabilities and knowledge of, and experience using, vocational reference sources, including: the Dictionary of Occupational titles (DOT) and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO); County Business Patterns published by the Bureau of Census; the Occupational Outlook Handbook published by the Bureau of Labor Statistics; and any occupational surveys of occupations prepared for SSA by various state employment agencies.

See https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf Osborne urges that the VE fails to meet this threshold. I disagree.

A thorough review of Dennison's testimony at the hearing as well as his CV convinces me that he was, in fact, qualified as an expert in this case and that he satisfies the standards set forth in the Handbook. For instance, the record demonstrates that Dennison is the owner of and job placement coordinator for a company. (R. 58, 245). Dennison testified that he has visited between 2 and 4 companies each week in the tristate area during the past several years. (R. 61) He explained that he works with job seekers and sets up interviews for them with prospective employers. (R. 62) Dennison has performed labor market analyses. (R. 62) He is affiliated with the International Association of Rehabilitation Professionals, the National Rehabilitation Counseling Association and the National Rehabilitation Association. (R. 247) Additionally, he was scheduled, as of the hearing, to take the Certified Rehabilitation Counselors exam. Finally, Dennison has testified in prior social security cases. (R. 64) Given Dennison's history of vocational counseling, his familiarity with the relevant vocational sources (i.e., the DOT), his past experience serving as a vocational expert, and his experience running his company, and the absence of strict qualifications in the regulations, there is no basis upon which I can find that the VE was unqualified. Dennison's professional qualifications and experience qualify him as a vocational expert and serve as a foundation for the ALJ's decision to deny disability in this instance.

B. HALLEX

Osborne also "takes issue" with the ALJ's failure to satisfy the requirements of HALLEX. *See* ECF Docket No. 9, p. 7-8. "'HALLEX' is an internal manual that conveys guiding principles, procedural guidance, and information to the Social Security Office of

Hearings and Appeals. *See* HALLEX 1-1-001." *Cartagena v. Comm'r. of S.S.*, Civ. No. 10- 5712, 2012 WL 1161554 at * 5 n. 3 (D. N.J. April 9, 2012). HALLEX provides that:

> After administering the oath or affirmation, the ALJ must (on the record): ask the VE to confirm his or her impartiality, expertise, and professional qualifications; verify the VE has examined all the vocational evidence of record; and ask the claimant and the representative whether they have any objection(s) to the VE testifying; and rule on any objections.

*Id.* I need not determine whether the ALJ complied with these requirements in this instance because the Third Circuit Court of Appeals has stated that the "HALLEX provisions … lack the force of law and create no judicially enforceable rights." *Border v. Comm'r. of Soc. Sec.*, 235 Fed. Appx., 853, 859 (3d Cir. 2007), *citing, Schweiker v. Hansen,* 450 U.S. 785, 101 S. Ct. 1468, 67 L.Ed.2d 685 (1981)). *See also, Cartagena*, 2012 WL 1161554 at * 5. "Since the manual is not binding, allegations of noncompliance should not be reviewed." *Cartagena*, 2012 WL 1161554 at * 5, *citing, Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) and *Western Radio Services v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996) ("we will not review allegations of noncompliance with an agency statement that is not binding on the agency."). *See also, Grimm v. Colvin*, Civ. No. 14-1614, 2015 WL 5123700 at * 5 (W.D. Pa. Sept. 1, 2015) (rejecting claimant's arguments that the ALJ violated HALLEX 1-2-6-74 by failing to ask whether he accepted the VE's qualifications, stating that "the HALLEX is an internal guidance tool with no legal force and as such it is not judicially enforceable or binding … [t]hus Plaintiff cannot establish that he suffered a deprivation of due process simply by pointing to alleged violations of HALLEX.") (internal quotation marks and citations omitted). Consequently, I reject Osborne's argument in this regard.

    3.    <u>Residual Functional Capacity</u>

Osborne next urges that the ALJ's findings regarding her residual functional capacity ("RFC") is not supported by substantial evidence of record. Osborne's argument is premised upon the ALJ's treatment of the report authored by Dr. Frank Zimba and her belief that the ALJ's rejection of Dr. Zimba's limitations on standing and walking was improper. According to Osborne, the ALJ cited to no other evidence in support of her findings. I disagree. As more fully set forth below, the ALJ's decision to reject certain of Dr. Zimba's conclusions was supported by substantial evidence of record. For instance, there was no reproduction of pain during Osborne's exam and the exam was generally within normal limits. (R. 25) Further, Osborne walked with a normal gait, her stance was normal, she was able to do a full squat, she walked on both her heels and her toes without difficulty, she did not use an assistive device, and she did not require help either getting on or off the examination table or when rising from a chair. (R. 300) Similarly, Osborne demonstrated full strength in both her upper and lower extremities. (R. 300-301). Further, although Osborne faults the ALJ for failing to mention limitations with respect to foot controls and operating a motor vehicle, there is no indication that the job positions identified by the VE would be precluded even if those limitations should have been included in the RFC. Consequently, I find no error with respect to the ALJ's formulation of the RFC.

  4. <u>Credibility / Fibromyalgia</u>

Finally, Osborne contends that the ALJ erred in assessing credibility, particularly in light of the complex nature of fibromyalgia. There is no question that fibromyalgia, an elusive problem, poses special circumstances in the social security arena. In evaluating fibromyalgia, courts acknowledge that symptoms of the disease are entirely subjective

and medical testing may not be able to assess its severity. *Singleton v. Astrue*, 542 F. Supp.2d 367, 377 (D. Del. 2008), *citing Wilson v. Apfel*, 1999 WL 993723, * 1 n. 1 (E.D. Pa. 1999). Because of the subjectivity of the symptoms of fibromyalgia, the credibility of a claimant's testimony is paramount when evaluating whether a claimant's fibromyalgia impairment is disabling. *Singleton*, 542 F. Supp. 2d at 378. "[G]reat weight must be given to a claimant's testimony regarding her subjective pain, especially when that testimony is supported by competent medical evidence." *Lintz v. Astrue*, Civ. No. 8-424, 2009 WL 1310646, at * 7 (W.D. Pa. 2009), *citing, Chrupcala v. Heckler*, 829 F.2d 1269, 1276, n. 10 (3d Cir. 1997). Moreover, the reports prepared by doctors treating a claimant with fibromyalgia are particularly significant and, of course, subject to the "Treating Physician Doctrine," which prescribes that great weight should be given to the opinion of a physician who has had the opportunity to continually observe the patient over a prolonged period of time. *Id (internal citations omitted); Perl v. Barnhart*, Civ. No. 3-4580, 2005 WL 579879 at * 3 (E.D. Pa. March 10, 2005); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Still, a claimant who has been diagnosed with fibromyalgia will not automatically be classified disabled under the Social Security Act. *Id.* "Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so." *Nocks v. Astrue*, 626 F. Supp. 2d 431, 446 (D. Del. 2009). Accordingly, when assessing a complainant's symptoms of fibromyalgia, an ALJ may consider whether the record reveals clinical documentation of the complainant's symptoms and whether diagnosing physicians reported on the

7

severity of the condition. *Singleton v. Astrue*, 542 F. Supp.2d at 378; see also SSR 12-2p (evaluation of fibromyalgia).

Additionally, an ALJ is charged with the responsibility of determining credibility. *Smith v. Califano*, 637 F.2d 968, 969 & 972 (3d Cir. 1981). The ALJ must consider "the entire case record" in determining the credibility of an individual's statements. SSR 96-7p. An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.* In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. *Id.* I must defer to the ALJ's credibility determinations unless they are not supported by substantial evidence. *Smith*, 637 F.2d at 927; *see also Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S. Ct. 1133, 43 L.Ed.2d 403 (1975).

After careful review, I find that the ALJ properly considered Osborne's fibromyalgia. First, I find that the ALJ's assessment of Osborne's pain and fatigue demonstrates that she understood the unique circumstances present in a case involving fibromyalgia. (R. 23) Here, the ALJ fully detailed Osborne's subjective complaints of

8

pain. The ALJ referenced Osborne's description of her pain level as a "4 out of 5," her state of exhaustion and need for naps; the stiffness she experiences in the morning; the difficulty she experiences dressing; and her need to take breaks every 10 to 15 minutes while doing chores. (R. 18, 23-25) The ALJ detailed Osborne's past treatment of trigger point injections, epidural back injections, muscle relaxants and hydrocodone as well as physical therapy. (R. 24) The ALJ carefully weighed Osborne's symptoms of pain and fatigue, comparing her symptoms with her history of pain management and objective findings. She then gave a detailed explanation as to as to why she found Osborne not entirely credible:

> She has not received the type of medical treatment one would expect, given the complaints of disabling symptoms and limitations. For example, her fibromyalgia syndrome is managed conservatively. Her mental health treatment has been conservative and essentially provided by her primary care physician. Additionally, physical examination findings and neurological findings have been essentially normal. The diagnostic imaging studies of record have been essentially unremarkable. Notably, Dr. Wright found the claimant dramatic and prone to exaggeration (Exhibit B5F). This only serves to undermine further the claimant's overall credibility regarding the degree of her symptoms and limitations.

(R. 25)

The ALJ also referenced the opinion evidence provided by Dr. Frank Zimba, who provided a consultative examination. Dr. Zimba found Osborne "able to occasionally lift and carry up to 50 pounds, sit for four hours in an eight-hour day, stand for two hours in an eight-hour day, and walk for two hours in an eight-hour day." (R. 25) The ALJ explained that she rejected Dr. Zimba's report insofar as it established limits on Osborne's ability to stand and walk. The ALJ noted that "at the exam, the claimant had positive trigger points but reproduction of pain was negative. Additionally, the exam was almost entirely within normal limits." (R. 25) The ALJ noted that, despite Osborne's

9

claims of disabling pain throughout, including radicular symptoms into both legs, Osborne was observed to have a "normal gait" and to "walk on her heels and toes without difficulty." (R. 18) Additionally, Osborne did not require help changing for the exam, getting on or off the exam table or rising from the chair. (R. 18) Nor did she require an assistive device. (R. 18) Dr. Zimba noted that Osborne "had 14 of 16 trigger points for fibromyalgia, but negative for reproduction of any pain and her exam was otherwise unremarkable. Neurologically, she had full strength in the upper and lower extremities, and no sensory deficits. She would zip, button and tie." (R. 18) The ALJ also found persuasive Dr. Wright's finding that Osborne was "dramatic and prone to exaggeration." (R. 25) Additionally, the ALJ explained how Osborne's daily activities documented greater functional ability than alleged. For instance, Osborne "goes to church, drives short distances, shops in stores, handles finances, is an occasional participant in social media, does light cleaning," and is alone during the day caring for herself while her son is at work. (R. 25)

Accordingly, I find that the ALJ did not err in evaluating Osborne's credibility and fibromyalgia and in giving Osborne's statements concerning the intensity, persistence, and limiting effects of her symptoms limited weight. Because the ALJ carefully considered Osborne's subjective claims of fatigue and pain, weighed it with the rest of the evidence, and found it to be inconsistent with the evidence as a whole, I find that substantial evidence supports the ALJ's decision.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH DELINSKI OSBORNE, ) ) Plaintiff, ) ) -vs- ) ) NANCY A. BERRYHILL,[2] ) ACTING COMMISSIONER OF ) SOCIAL SECURITY, ) ) Defendant. ) | Civil Action No. 16-96 |

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 2nd day of March, 2017, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Docket no. 8) is denied and Defendant's Motion for Summary Judgment (Docket no. 12) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge

---

[2] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017.